Appeal from a judgment of the Supreme Court, Monroe County (Joseph D. Valentino, J.), rendered November 3, 2010. The judgment convicted defendant, upon a jury verdict, of murder in the second degree, robbery in the first degree and attempted robbery in the first degree.
It is hereby ordered that the judgment so appealed from is reversed on the law and a new trial is granted.
Memorandum: On appeal from a judgment convicting him upon a jury verdict of, inter alia, murder in the second degree (Penal Law § 125.25 [3]) and robbery in the first degree (§ 160.15 [4]), defendant contends that Supreme Court abused *1453 its discretion in precluding him from presenting expert testimony on the reliability of eyewitness identifications. We agree.
“Because mistaken eyewitness identifications play a significant role in many wrongful convictions, and expert testimony on the subject of eyewitness recognition memory can educate a jury concerning the circumstances in which an eyewitness is more likely to make such mistakes, ‘courts are encouraged . . . in appropriate cases’ to grant defendants’ motions to admit expert testimony on this subject” (People v Santiago, 17 NY3d 661, 669 [2011], quoting People v Drake, 7 NY3d 28, 31 [2006]). In People v LeGrand (8 NY3d 449 [2007]), the Court of Appeals established a two-stage inquiry for considering a motion to admit expert testimony on eyewitness identification (see Santiago, 17 NY3d at 669). “The first stage is deciding whether the case ‘turns on the accuracy of eyewitness identifications and there is little or no corroborating evidence connecting the defendant to the crime’ (LeGrand, 8 NY3d at 452). If the trial court finds itself with such a case, then it must proceed to the second stage, which involves the application of four factors. The court must decide whether the proposed ‘testimony is (1) relevant to the witness’s identification of defendant, (2) based on principles that are generally accepted within the relevant scientific community, (3) proffered by a qualified expert and (4) on a topic beyond the ken of the average juror’ (id.). If, on the other hand, sufficient evidence corroborates an eyewitness’s identification of the defendant, then there is no obligation on the part of the trial court to proceed to the second stage of analysis, because testimony concerning eyewitness identifications is unnecessary” (Santiago, 17 NY3d at 669).
Here, the People concede that this case hinges upon the accuracy of the eyewitness’s identification of defendant, and we agree with defendant that there was little or no corroborating evidence connecting him to the crime (see LeGrand, 8 NY3d at 452). The eyewitness testified that, on the evening of December 27, 2008, he was with the victim at the victim’s barbershop when a man exited a white Chevy Malibu and asked if he could still get a haircut. The victim said yes, and the man sat down in a barber chair. Shortly thereafter, three men entered the shop. The first two men to enter were dark-skinned, and the first of the two men (hereafter, the shooter) wore a dark coat and a black winter hat. The third man to enter was lighter-skinned and taller, with a bright orange coat and matching baseball cap, and he tried to lock the door behind him. The men ordered the victim and the eyewitness to the ground, *1454 demanding money and drugs. After taking approximately $200 from the victim, the shooter fatally shot the victim, and the assailants fled. The shooter returned briefly, and the eyewitness heard a “clicking sound over his head.” The shooter then left the shop and the eyewitness called 911.
Later that evening, a police officer responding to a dispatch about the robbery encountered and pursued a white Chevy Malibu with three men inside. The three men fled on foot, but the officer apprehended the driver, Willie Harvey. The officer transported Harvey back to the crime scene, where a witness who had been waiting for a bus near the barber shop when the robbery occurred identified him. A few weeks after the robbery, the police showed the eyewitness a photo array containing a photograph of defendant. The eyewitness pointed to defendant’s photograph and said, “that looks a lot like the shooter,” i.e., the first man to enter the shop. Two months later, the eyewitness identified defendant in a lineup as “the last guy who came into the barber shop,” and he identified defendant as such at trial. Defendant was the only individual included in both the photo array and the lineup.
Contrary to the contention of the dissent, the fact that the eyewitness viewed the perpetrators at relatively close range and in well-lit conditions “does not constitute corroborating evidence of the identification for purposes of determining whether expert testimony regarding the accuracy of an eyewitness identification is admissible” (People v Nazario, 100 AD3d 783, 784 [2012], lv denied 20 NY3d 1063 [2013] [emphasis added]; see Santiago, 17 NY3d at 669). The only testimony corroborating the eyewitness’s identification of defendant came from Harvey, who even the prosecutor characterized as “a liar.” Harvey initially denied any knowledge of the robbery, and thereafter identified other individuals as the perpetrators. When shown a photo array containing defendant’s photograph about a month after the robbery, Harvey told the police that he did not recognize anyone. Harvey only identified defendant as one of the perpetrators minutes before he pleaded guilty to robbery in the first degree in exchange for the minimum sentence of 10 years. In addition to Harvey’s dubious credibility, we note that “several factors call [his] corroborating identification [ ] into question” (Santiago, 17 NY3d at 673). Harvey had never met defendant prior to the robbery, he remained in the vehicle during the robbery, and he had limited opportunities to observe defendant that night (cf. People v Muhammad, 17 NY3d 532, 546 [2011]; People v Abney, 13 NY3d 251, 269 [2009]). We therefore agree with defendant that Harvey’s testimony was *1455 insufficient to relieve the court of its obligation to proceed to the second stage of the LeGrand analysis (see Santiago, 17 NY3d at 673).
With respect to the second stage of the analysis, we conclude that the proposed testimony “satisfies the general criteria for the admissibility of expert proof” (Muhammad, 17 NY3d at 546), i.e., it is “ ‘(1) relevant to the witness’s identification of defendant, (2) based on principles that are generally accepted within the relevant scientific community, (3) proffered by a qualified expert and (4) on a topic beyond the ken of the average juror’ ” (Santiago, 17 NY3d at 669, quoting LeGrand, 8 NY3d at 452). Defendant sought to introduce expert testimony from Dr. Nancy Franklin, a psychologist, concerning various factors that affect the reliability of eyewitness identifications, including “the level of violence of the interaction [event violence], the length of time of the incident [event duration], [and] the presence of a weapon or other attention-calling object [weapon focus].” Those factors are clearly relevant to the eyewitness’s identification of defendant (see Abney, 13 NY3d at 268). With respect to event violence and weapon focus, the eyewitness testified that one of the assailants put a gun to his head, pistol-whipped both him and the victim, and then shot the victim in the chest at close range. At least one of the other assailants also displayed a handgun. After the assailants fled, the shooter returned and the eyewitness heard a “clicking sound” over his head. The eyewitness testified that he did not know how long the robbery lasted. With respect to general acceptance in the scientific community, we “must assume on this record” that Franklin’s proposed testimony is based on principles that are generally accepted in the scientific community because “defendant sought, and was denied, a Frye hearing on that issue” (People v Oddone, 22 NY3d 369, 379 [2013]). Finally, we agree with defendant that Franklin is a qualified expert on eyewitness identifications (see People v Norstrand, 35 Misc 3d 367, 372 [2011]; People v Abney, 31 Misc 3d 1231 [A], 2011 NY Slip Op 50919[U], *9-13 [Sup Ct, NY County 2011], on remand from 13 NY3d 251 [2009]), and that the subject of her proposed testimony is beyond the ken of the average juror (see People v Lee, 96 NY2d 157, 162 [2001]).
Because the evidence of defendant’s guilt is not overwhelming, the error cannot be deemed harmless (see Santiago, 17 NY3d at 673-674; Abney, 13 NY3d at 268; Nazario, 100 AD3d at 785). We therefore reverse the judgment and grant defendant a new trial.
All concur except Scudder, P.J., and Lindley, J., who dissent and vote to affirm in the following memorandum.